UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
: 
RUSSELL L. PAINTIFF, : CASE NO. 1:14-CV-00588
:
        Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 6]
MARY KOVACK, :
:
        Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff Russell Paintiff, Jr. filed this action against Medina County Domestic Relations Court Judge Mary Kovach to seek relief from her judgment. He claims she showed bias against him in the course of his divorce proceedings, denied him due process, and violated the Americans with Disabilities Act ("ADA"). Judge Kovach filed a Motion to Dismiss pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6)(Doc. No. 6), claiming this Court lacks subject matter to conduct appellate review of a state court judgment under the Rooker-Feldman Doctrine. She further asserts she is entitled to absolute judicial immunity. For the reasons stated below, this Court **GRANTS** the Motion to Dismiss (Doc. No. 6).

**I. Background**

Paintiff was the plaintiff in a pending divorce proceeding over which Judge Kovach presided. *See Paintiff v. Paintiff*, No. 12-DR-0423 (Medina County Ct. Com. Pls.). He alleges

Judge Kovach treated him less favorably than his former spouse based on his gender, and behaved unprofessionally. He contends she refused to rule on his motions, refused to compel his former spouse to comply with discovery requests, and regularly arrived late for court proceedings, causing the parties to incur unnecessary attorney fees.

Plaintiff objects primarily to the division of property entered into judgment on the day his case was scheduled for trial. He contends Judge Kovach arrived two hours late for the proceeding, and then called the attorneys into her chambers in an attempt to compel them to negotiate a settlement. Plaintiff alleges that during this meeting with the attorneys, Judge Kovach indicated to his counsel that she was going to order Plaintiff to pay alimony to his wife for the remainder of his life if the case went to trial. His only option to avoid paying alimony was to negotiate a settlement.

Plaintiff contends he found the divorce proceedings in general to be very stressful, and having to negotiate a settlement under those conditions was overwhelming to him. He indicates he was previously diagnosed with post traumatic stress disorder and an anxiety disorder following an automobile accident and is on medication for those conditions. He states he became so anxious on the morning of trial that he took additional doses of his medication, which interfered with his ability think clearly. He claims that Judge Kovach's bailiff added to the stress he felt during the negotiations by repeatedly checking on their progress with the admonishment that he had "better settle this or the Judge won't be happy." (Doc. No. 1 at 5). He claims he felt extremely pressured into accepting a settlement which he did not understand or believe to be fair.

Thereafter, on June 28, 2013, he filed a Motion for Relief from Judgment, claiming he lacked the mental capacity to enter into the agreement that day and was forced to accept the settlement under duress. He claims his Motion was set for a hearing on January 29, 2014; however,

Judge Kovach arrived half an hour late for the hearing and then declared she would hear a Motion to Show Cause filed by his ex-wife which was not on the docket for that day. He states his attorney objected and Judge Kovach got upset saying, "I hereby throw his Motion out because it was untimely." (Doc. No. 1 at 7). She indicated the Motion was untimely because it was filed before the final judgment was entered on July 3, 2013. He indicates his attorney pointed to the transcript of the proceedings in which Judge Kovach pronounced that she was adopting the agreement as an order of the court as of that day. Plaintiff claims the Judge indicated "this is my order today" and terminated the proceedings, without conducting a formal hearing on either Motion. (Doc. No. 1 at 7).

Plaintiff claims Judge Kovach violated his right to due process and discriminated against him on the basis of gender and disability. He also contends she violated four cannons of the Ohio Judicial Code of Conduct. He seeks reversal of the decision denying his Motion for Relief from Judgment, and reinstatement of his domestic relations case to the state court's docket. He asks this Court to order Judge Kovach to recuse herself from presiding over future proceedings, and requests a change of venue.

Judge Kovach filed a Motion to Dismiss under Rule 12(b)(1) and Rule 12(b)(6). She argues that while Plaintiff brought this action under a civil rights statute, he seeks review and reversal of his state court judgment. She cites the Rooker-Feldman doctrine to assert that this Court lacks subject matter jurisdiction to conduct appellate review of a state court decision. To the extent Plaintiff is asserting civil rights claims, she asserts she is entitled to absolute immunity because all of the claims are based on actions she performed while acting as the judge assigned to preside over his case. She asserts he also fails to state a claim upon which relief may be granted.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed.R.Civ.P. 12(b)(1). Generally, Fed.R.Civ.P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.1994).

A facial attack challenges the sufficiency of the pleading itself. In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F.Supp.2d 840, 884-85 (N.D. Ohio 2010), citing, *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D. Ohio. 1997). The Defendant facially attacks subject matter jurisdiction, and this Court therefore must accept the Plaintiff's material allegations in the Complaint as true. *Ritchie*, 15 F.3d at 598. The Plaintiff has the burden of proving subject matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir.1990).

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 555. The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 677-78 , further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id.*

The Sixth Circuit has held that a Court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. FED. R. CIV. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. Analysis

To the extent Plaintiff is asking this Court to relieve him of the judgment in his divorce case, and order Judge Kovach to either recuse herself or move the case to a different venue, this Court lacks jurisdiction to grant this relief. United States District Courts do not have jurisdiction to

overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state court judgment itself violates his or her federal rights. *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[1] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then

---

[1] 28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-311 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

Rooker-Feldman is a doctrine with narrow application. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99. It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299. Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether Rooker-Feldman bars a claim, the Court must look to the source of the injury the plaintiff alleges in the complaint. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the plaintiff's injury is the state-court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368-69. In conducting this inquiry, the Court must also consider the Plaintiff's requested relief. *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

Here, Plaintiff requests that the Court reverse a decision of the Medina County Domestic Relations Court and relieve him from that court's judgment. Although he contends the Judge was biased against him, he asks this Court to exercise appellate jurisdiction over the case and reverse

the judgment. The source of his injury under those circumstances is the state court judgment itself. This Court lacks subject matter jurisdiction to review the state court judgment to determine whether he lacked capacity to enter into the agreement, and cannot overturn that judgment or order Judge Kovach to reverse her decision denying relief from that judgment. Defendant's Motion to Dismiss pursuant to Federal Civil Procedure Rule 12(b)(1) is granted.

To the extent Plaintiff is attempting to bring civil rights claims apart from challenging his Domestic Relations Court judgment, Judge Kovach is entitled to absolute judicial immunity. The law gives absolute immunity to judges from suits arising out of a judge's performance of judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir.2004); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment is not impaired by the exposure of potential damages. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. Plaintiff alleges no facts to show that either of these criteria was met in this case.

The determination of whether an action is performed in the Defendant's judicial capacity, depends on the nature and function of the act, not on the act itself. *Mireles*, 502 U.S. at 13; *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Looking first to the nature of the act, the Court must determine whether it is a function generally performed by a judge. *Stump*, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally

-8-

performed by judges. *Mireles*, 502 U.S. at 13. Second, an examination of the function of the act alleged requires the Court to assess whether the parties dealt with the judge in his or her judicial capacity, or as a civilian.

Upon applying these principles, it is evident on the face of the pleading that all of the claims in the Complaint are based on actions Judge Kovach performed in her capacity as the judge presiding over Plaintiff's domestic relations case. Plaintiff dealt with Judge Kovach while she was acting as a judge, and not in some other venue or context. Furthermore, the acts of which he complains, presiding over hearings, and issuing judicial orders are all functions normally performed by judges. Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction of the court over which the Defendant presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.) When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. *Stump*, 435 U.S. at 356-57. A judge will be not deprived of immunity because the action she took was performed in error, done maliciously, or was in excess of her authority. *Id*. Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the Complaint which reasonably suggest that Judge Kovach clearly acted outside of the subject matter jurisdiction of the domestic relations court. The judges of the Medina County Court of Common Pleas, Domestic Relations

Division have jurisdiction to hear all matters involving divorce, dissolution of marriage, legal separation, annulment, and, except in cases subject to the exclusive jurisdiction of the juvenile court, all matters involving paternity, child custody, visitation, child support, the allocation of parental rights and responsibilities for the care of children and all post-decree proceedings arising from any case pertaining to those matters. Ohio Rev. Code § 2301.03. While Plaintiff alleges Judge Kovach issued decisions which were procedurally flawed and biased against him, she was not without subject matter jurisdiction to enter those decisions. She therefore is entitled to absolute immunity from monetary damages and injunctive relief in this matter.

### IV. Conclusion

Accordingly, Defendant's Motion to Dismiss (Doc. No. 6) is **GRANTED** and this action is dismissed pursuant to Federal Civil Procedure Rules 12(b)(b)(1) and 12(b)(6). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

Dated: October 28, 2014    *s/ James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.